UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL NUNEZ GARCIA (A# 244-697-569),<br>Petitioner,<br>v.<br>WARDEN, CENTRAL VALLEY ANNEX DETENTION FACILITY,<br>Respondent. | No. 1:26-cv-06536 TLN SCR<br><br><u>FINDINGS & RECOMMENDATIONS</u> |

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

**I. Factual and Procedural History**

Petitioner is a citizen and national of Cuba who applied for admission into the United States on September 3, 2024, at the Eagle Pass (Texas) Port of Entry through the CBP One application. ECF No. 1 at 7; ECF No. 6 at 11 (Form I-213). On the same day, immigration officials issued him a Notice to Appear ("NTA") administratively charging him as inadmissible under 8 U.S.C. § 1182(a)(7)(i)(I) (noncitizen present without valid entry document) and granted him humanitarian parole pursuant to § 1182(d)(5). ECF No. 6 at 11; <u>id.</u> at 4-8 (NTA).

On July 15, 2026, local law enforcement arrested Petitioner for fraud under Fla. Stat. § 817.29 and unlawful use of a two-way communications device under Fla. Stat. § 934.215. ECF

No. 6. According to the Complaint/Arrest Affidavit, Petitioner allegedly cheated on his driver's license exam via hidden earpiece because he could not comprehend English. Id. at 13-23. On July 17, 2026, Immigrations and Customs Enforcement ("ICE") took Petitioner into custody from county jail. ECF No. 6 at 10-11. He is currently detained at the California City Immigration Processing Center within this judicial district. ECF No. 1 at 1. His criminal case in Florida remains pending.

Petitioner filed the § 2241 petition on August 17, 2026, alleging that his detention without bond despite his previous parole and lack of removal order violates the Due Process Clause of the Fifth Amendment. ECF No. 1 at 7, 10. Petitioner states that he was scheduled for a bond hearing on August 3, 2026, but it did not occur due to his transfer to California City. Id. at 3. By way of relief, Petitioner seeks his release or, in the alternative, an individualized custody hearing before an IJ. Id. at 8. Respondent opposes the petition on grounds Petitioner is an applicant for admission under 8 U.S.C. § 1225(b)(2) and does not possess a due process right to freedom other than the form provided by that statute. ECF No. 6 at 1-2.

## II. Legal Standards

### A. Constitutional Standards

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Similarly, Ninth Circuit precedent holds that the Due Process Clause applies to noncitizens regardless of whether they are "seeking admission" or are "admitted" under immigration law. Wong v. United States, 373 F.3d 952, 973 (9th Cir. 2004), abrogated on other grounds by Wilkie v. Robbins, 551 U.S. 537 (2007); see also Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1171-72 (W.D. Wash. 2023) (finding that the plaintiffs who were detained under § 1225(b)(1) adequately alleged a right under "substantive due process to bond hearings" because "the Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals"); Rosales-Garcia v.

Holland, 322 F.3d 386, 412 (6th Cir. 2003) (en banc) ("If excludable [non-citizens] were not protected by even the substantive component of constitutional due process, ... we do not see why the United States government could not torture or summarily execute them. ... [W]e conclude that government treatment of excludable [noncitizens] must implicate the Due Process Clause of the Fifth Amendment.").

Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews, 424 U.S. 319, applies. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

An as-applied challenge "contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to others." Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted).

**B. Statutory Immigration Framework**

A non-citizen arrested at or near the border without valid entry documents is normally ordered removed "without further hearing or review" pursuant to an expedited removal process. See 8 U.S.C. § 1225(b)(1)(A)(i). But if such non-citizen "indicates either an intention to apply for asylum . . . or a fear of persecution," then that non-citizen is referred for an asylum interview. See 8 U.S.C. § 1225(b)(1)(A)(ii). While awaiting this credible fear interview, the non-citizen is to remain detained. See 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). If an immigration officer determines after that interview that the non-citizen has a credible fear of persecution, "the [non-citizen] shall

be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). At that point, the asylum applicant will receive full consideration of the asylum claim in a standard removal hearing.

The statutory mechanism for release from detention for an asylum applicant apprehended at the border is temporary release on parole "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); see also 8 C.F.R §§ 212.5(b), 235.3. A grant of humanitarian parole is premised on a finding that the noncitizen "present[s] neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). Such parole, however, "shall not be regarded as an admission of the [non-citizen]." 8 U.S.C. § 1182(d)(5)(A). Instead, when the purpose of the parole has been served, "the [non-citizen] shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." Id.

## III. Analysis

### A. Applicable Detention Statute

"Where a [noncitizen] falls within [the] statutory [detention] scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). It is evident from Petitioner's application for admission at the border and subsequent release on humanitarian parole that immigration officials processed him pursuant to 8 U.S.C. § 1225(b). See Jennings v. Rodriguez, 583 U.S. 281, 288 (2018) ("Regardless of which of [§ 1225(b)(1) or (b)(2)] authorizes their detention, applicants for admission may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit.") (quoting 8 U.S.C. § 1182(d)(5)(A)). Accordingly, Petitioner is subject to mandatory detention under § 1225(b) and is not entitled to bond as a matter of statutory right. The undersigned turns next to whether Petitioner is entitled to habeas relief on due process grounds.

### B. Due Process Analysis

The Court turns first to the question of whether Petitioner has a protected liberty interest. The undersigned agrees with the vast majority of judges in this Circuit, including the assigned

District Judge, who have held that "individuals who have been paroled into the United States under § 1182(d)(5)(A) have a clear interest in remaining out of custody that is protected by the Fifth Amendment." Juan Carlos V.B. v. Chestnut, No. 1:26-CV-03077-TLN-SCR, 2026 WL 1224238, at *2 (E.D. Cal. May 5, 2026) (collecting cases); see also D. L.C. v. Wofford, No. 1:25-CV-01996-DC-JDP (HC), 2026 WL 25511, at *4 (E.D. Cal. Jan. 5, 2026) (same).

Respondent's arguments against a protected liberty interest are unavailing. They cite to Department of Homeland Security v. Thuraissigiam, 591 U.S. 103 (2020), which is materially distinguishable. It concerned an individual arrested mere yards from the border a short time after entering the United States without inspection, and who DHS had never released into the United States, not an individual like Petitioner who has established meaningful ties to the United States. See Padilla, 704 F. Supp. 3d at 1171-72 ("[Thuraissigiam's] discussion of due process is necessarily constrained to challenges to admissibility to the United States" and "[t]he Court answered no broader question."); Sadeqi v. LaRose, 809 F. Supp. 3d 1090, 1093 (S.D. Cal. 2025) (interpreting Thuraissigiam as "circumscribing an arriving alien's due process rights to *admission*, rather than limiting that person's ability to challenge *detention*.") (emphasis in original). Their reliance on Jennings to foreclose a due process challenge is also misplaced. There, the Supreme Court addressed only whether periodic bond hearings are required under immigration statutes and remanded "to consider respondents' constitutional arguments on their merits . . . . in the first instance." 538 U.S. at 312.

As for the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution, Respondent does not dispute that Petitioner did not receive pre-deprivation notice and hearing before his arrest. Nor do they assert any exigent circumstances for his re-arrest. Thus, upon consideration of the three factors set forth in Mathews v. Elderidge, 424 U.S. 319, 335 (1976), Petitioner's re-arrest constitutes a procedural due process violation. See Julio Fernando R.P. v. Andrews, No. 1:26-CV-05547-TLN-CSK, 2026 WL 2137758, at *2 (E.D. Cal. July 24, 2026) (analyzing the Mathews factors and making similar finding).

In tailoring the remedy for this due process violation, the undersigned observes that the Supreme Court "usually has held that the Constitution requires some kind of a hearing before the

State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127 (1990) (emphasis in original). The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." Zinermon, 494 U.S. at 129. Here, where Respondent does not make a specific argument as to why Petitioner's criminal history warrants only a post-deprivation remedy (and in fact denies the Due Process Clause applies at all), the undersigned finds that release is the appropriate remedy.

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus (ECF No. 1) be granted.

2. Respondent be ordered to immediately release Petitioner MIGUEL NUNEZ GARCIA (A# 244-697-569) from their custody and to return all of Petitioner's documents and possessions at the time of release.

3. Respondent be directed to file a notice certifying compliance with the above provisions within three (3) days from the date of any final order requiring release.

4. If the government seeks to re-detain Petitioner, it must provide no less than seven (7) days of notice to Petitioner and provide Petitioner with a bond hearing before an immigration judge at which the government must prove by clear and convincing evidence that Petitioner is a flight risk or danger to the community such that his re-detention is warranted.

5. The final order entered in this case not address the circumstances in which Respondent may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal.

6. The Clerk of Court be directed to:

   a. Serve a copy of any release order on the California City Immigration Processing Center; and,

   b. Enter judgment in favor of Petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **three days** after being served with these findings and recommendations, any party may file written objections with

the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 27, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE